**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Kevin Bores, *et al.*,

Plaintiffs,

Civ. No. 05-2498 (RHK/JSM)
**ORDER**

v.

Domino's Pizza LLC,

Defendant.

---

Scott E. Korzenowski, J. Michael Dady, Clarence J. Kuhn, Dady & Garner, P.A., Minneapolis, Minnesota, for Plaintiffs.

Marc P. Seidler, Brian M. Dunn, DLA Piper US LLP, Chicago, Illinois, Sonya R. Braunschweig, DLA Piper US LLP, Minneapolis, Minnesota, for Defendant.

---

This matter is before the Court on Plaintiffs' Motion for Enforcement of Judgment. For the reasons set forth below, the Court will deny the Motion.

**BACKGROUND**

The issue in this franchise dispute was whether the Defendant, Domino's Pizza LLC ("Domino's"), had the right to force Plaintiffs (Domino's franchisees) to install its new point-of-sale computer system, called PULSE. The PULSE hardware could only be purchased from IBM and the PULSE software could only be purchased from Domino's. Plaintiffs asserted that their franchise agreements gave them the right to obtain computer hardware and software "from any source." Accordingly, they argued that Domino's' attempt to mandate PULSE ran afoul of their rights under the franchise agreements.

The parties cross-moved for summary judgment; on May 23, 2007, the Court granted each motion in part and denied each in part. The crux of the Court's ruling was that Domino's could not continue to mandate PULSE without providing "specifications" for PULSE hardware and software that would enable Plaintiffs to obtain equipment meeting those specifications "from any source." Judgment was subsequently entered, stating:

> Should Domino's persist in requiring the[] Plaintiffs to install PULSE in their Domino's stores, Domino's must provide them with specifications for the PULSE hardware and software, and Domino's must permit them to purchase computer hardware and software meeting those specifications from any source.

Domino's later appealed the summary-judgment Order and the Judgment; its appeal remains pending.

Invoking Federal Rule of Civil Procedure 70, Plaintiffs now move for an Order "enforcing" the judgment, but the exact nature of the relief Plaintiffs seek is unclear. While Plaintiffs initially ask the Court to "enforce" the Judgment by requiring Domino's to provide franchisees with "actual computer software specifications" (Pl. Mem. at 2), they later ask the Court to hold Domino's in contempt for failing to comply with the terms of the Judgment (id. at 17). Regardless of how the Motion is styled or construed, however, it will be denied because Plaintiffs have failed to satisfy their burden of demonstrating any intentional non-compliance on Domino's' part. See Indep. Fed'n of Flight Attendants v. Cooper, 134 F.3d 917, 920 (8th Cir. 1998) (party seeking contempt bears burden of "prov[ing] facts warranting a civil contempt order by clear and

convincing evidence").[1]

**ANALYSIS**

Plaintiffs argue that Domino's has failed to comply with the Order in three ways. None of their arguments has merit.

1. "Vague" specifications. Plaintiffs first argue that although Domino's has provided them with what it calls "specifications" for computer hardware and software, those specifications are too vague and leave it "impossible for [third-party software] vendors to satisfy [Domino's'] actual requirements." (Reply at 5-8; accord Pl. Mem. at 7.)[2] This argument is specious.

At the hearing on the summary-judgment motions, Plaintiffs made clear that they were simply seeking "functional" specifications – that is, "what functions [Domino's] requires th[e] software to perform" (May 23, 2007 Order at 17 n.13) – and not detailed technical specifications for PULSE. That is precisely what Domino's has provided. In

---

[1] Domino's devotes a portion of its Opposition to arguing that the Court's powers under Rule 70 are narrow and that relief is rarely granted under that Rule. Regardless, it is clear that the Court enjoys the power to grant the relief Plaintiffs seek under its inherent powers or under the All Writs Act, 28 U.S.C. § 1651. See Peacock v. Thomas, 516 U.S. 349, 356 (1996) (noting district courts' inherent powers to enforce their judgments); United States v. N.Y. Tel. Co., 434 U.S. 159, 172 (1977) (district court enjoys power under All Writs Act to issue orders "as may be necessary or appropriate to effectuate . . . orders it has previously issued").

[2] The parties focus their arguments on Domino's software specifications, not the hardware specifications; Plaintiffs mention the latter only superficially and assert that they are overly stringent. The reason for the hardware specifications, however, is that the required hardware will be partially compatible with PULSE, which Domino's intends to require franchisees to install in the future (once their franchise agreements expire). Hence, Domino's used hardware requirements that may actually *aid* franchisees in the future, because they will not have to purchase entirely new equipment if Domino's later mandates PULSE.

the Court's view (and that of Domino's' expert, David Duryea), the specifications provide an appropriate level of detail to explain to Plaintiffs and their software vendors what functions the software needs to perform. For example, the specifications require the software to be able to "maintain customer data" and "allow editing and updating" of that data (Specifications 1.2.1-.2); "display security messages (e.g., no delivery after dark)" (id. 1.3.3); and "allow manual price adjustments" (id. 1.4.10).[3] More detailed specifications would have made it more difficult for vendors to adapt "off-the-shelf" (already existing) software for use in Domino's stores.

What is most damning to Plaintiffs' argument, however, is that *all* of Plaintiffs' proposed software vendors have acknowledged that their products currently meet most of Domino's specifications, and can be readily and easily modified to meet all of them. For instance, David Brekke, a Senior Corporate Sales Executive from Speedline Solutions ("Speedline"), stated that when he demonstrated Speedline's software for Domino's the "software met all but a few of [Domino's'] requirements." (Brekke Aff. ¶ 17.) Similarly, software produced by National Systems Corporation ("NSC") failed to meet only 20 of Domino's' 207 software specifications when it was initially tested. (Kargman Aff. ¶ 20.) Both Speedline and NSC continue to seek certification,[4] and both recently stated that they

[3] The specifications are attached to the parties' papers in several places. (See, e.g., Bores Aff. Ex. B.)

[4] Domino's requires third-party software vendors to be "certified," that is, shown to be compliant with Domino's' specifications. Certification involves software testing that lasts several days.

are "fully capable of" meeting Domino's' specifications and "fully intend to do [so]." (Second Brekke Aff. ¶ 6; accord Second Kargman Aff. ¶ 7.) In fact, no software vendor has informed Domino's that it did not understand the specifications or could not comply with them. (Pederson Aff. ¶ 25 ("No vendor . . . ever raised any questions concerning the clarity or sufficiency of the specifications, nor did any vendor ever express that the specifications were unfair or unrealistic.").)[5]

The Court strongly suspects that even if Domino's had provided Plaintiffs with more detailed "mathematical descriptions" for its specifications, Plaintiffs still would have filed the instant Motion. Chris McGlothlin, Domino's' Chief Information Officer, stated that Domino's considered giving Plaintiffs very detailed technical specifications,

---

[5] Plaintiffs assert that Domino's intentionally left the specifications vague and that, when NSC was having its software tested for certification, Domino's imposed new requirements that were not found in the specifications. (Reply at 6-7.) For example, one specification requires software to be able to display certain data, but Domino's told NSC that its software did not meet this specification because the data was displayed in more than one report, despite the specification not indicating that the data must be displayed in only one place. (Second Kargman Aff. ¶ 12.) Tellingly, however, Plaintiffs did not raise this argument in their opening brief; they assert that Domino's is "changing" the specifications for the first time in their Reply. It appears that it is Plaintiffs who are "changing," as their Reply makes clear.

In any event, even if Plaintiffs are correct that Domino's has occasionally required software to be able to perform functions not *expressly* stated in the specifications, that should not come as a huge surprise. The Court agrees with Wayne Pederson, Domino's' Director of Information Systems, that "[n]o matter how detailed software specifications are, every software project requires communication between developer and customer and amplification or clarification of the requirement. If Domino's . . . software specifications had been 100 pages long, or 1,000 pages long, they could not have covered every detail." (Pederson Aff. ¶ 29.) If Plaintiffs had proffered evidence indicating that Domino's was playing fast and loose by changing the software specifications simply to avoid certifying software as compliant, Plaintiffs' argument might gain traction. There is no evidence of that, however. Nor is there any evidence that the "un-expressed" specifications cannot quickly and easily be remedied by vendors (as opposed to unwritten specifications requiring complicated software changes).

which would have consisted of "approximately 1000 pages of precise descriptions." (McGlothlin Aff. ¶ 12.) If that had been the case, however, Plaintiffs' software vendors probably would not have been able to adapt off-the-shelf software for use in Domino's stores; they would have had to create the software from scratch, a costly (and lengthy) proposition. In that instance, Plaintiffs likely would have come into Court arguing that the specifications were *too* specific, rendering it impossible (financially or otherwise) for them to acquire software meeting the specifications from other sources. Instead, Domino's issued less onerous specifications that could be met in several ways, because it is "not really interested in how vendors accomplish[] the required functionalities, but only that they [are] there." (Pederson Aff. ¶ 29.) That is consistent with the vendors' own views; they all admitted that specifications should merely "describe[] what the system should do and *not how the system should do it*." (Brekke Aff. ¶ 9 (emphasis added); accord Kargman Aff. ¶ 9; Bouras Aff. ¶ 11; Mulloy Aff. ¶ 13.)

2. Failure to work with vendors in good faith. Plaintiffs next argue that Domino's has not worked with the software vendors in good faith, because it has utilized "every kind of stall tactic imaginable" to intentionally delay the certification process. (Reply at 9-20.) The Court cannot agree.

It is true that the certification process has proceeded more slowly than Plaintiffs (and probably even Domino's) would like. But the reality of doing business with a large corporation is that e-mails are not responded to immediately, phone calls often do not get returned within an hour, and things generally move more slowly than Plaintiffs apparently

believe that they should. Frequently, one person cannot make a decision without input from others; facts need to be gathered and issues discussed before a response can be formulated. In the Court's view, that is precisely what has occurred here.

Moreover, some of the delay in the certification process is attributable to the vendors themselves. Domino's has asked vendors to sign non-disclosure agreements concerning some of its data, and several of them (including Speedline and NSC) have negotiated changes to those agreements. Any changes must be vetted by Domino's' legal department before they can be accepted, and that process takes some time. (Pederson Aff. ¶ 16 & Ex. A.) In other instances, vendors were slow in responding to Domino's. For example, on September 16, 2007, a few days after NSC had failed its initial certification testing, Pederson advised the franchisee sponsoring NSC that it could attempt certification again on September 24, 2007, just eight days later (and hardly consistent with intentional delay). (Pederson Aff. Ex. D.)[6] Pederson did not receive a response until October 1, more than two weeks later, and at that time *NSC* requested a delay until November to schedule further certification testing. (Pederson Aff. Ex. E.)

By way of another example, on August 9, 2007, Speedline contacted Domino's to schedule certification testing. (Brekke Aff. ¶ 20.) Domino's told Speedline that it could not schedule testing until November because other vendors were already slotted for

---

[6] Domino's requires franchisees to "sponsor" software vendors, out of a concern that approving a vendor "that hadn't been requested by a franchisee [would be considered by some franchisees] to be a suspect endorsement of a 'competitor.'" (Pederson Aff. ¶ 35.)

certification testing in the interim. On September 17, 2007, however, *Domino's* contacted *Speedline* and advised it that it had a cancellation and could schedule Speedline's certification testing for either October 1 or October 8, if Speedline were ready. (Pederson Aff. ¶¶ 37-38 & Ex. B.) Such a move on Domino's part is inconsistent with the suggestion that Domino's has intentionally delayed the certification process.

Simply put, the record currently before the Court does not demonstrate any attempt by Domino's to stonewall or otherwise delay the certification process.[7]

3. Foisting PULSE on franchisees through the back door. Finally, Plaintiffs argue that even though Domino's has provided "specifications" for franchisees to obtain computer hardware and software from third-party vendors, in actuality Domino's is still requiring franchisees to install PULSE. They point to the fact that Domino's is requiring franchisees seeking to install third-party computer systems to contact Domino's by December 31, 2007 to schedule a certification review. A franchisee that fails to do so runs the risk that certified software will not be installed in-store by June 30, 2008 – which is the deadline for all hardware and software upgrades to be in place – because Domino's' installation resources are limited. (McGlothlin Aff. Ex. C.) Domino's has stated that any franchisee without a certified third-party computer system in place by June 30, 2008 "may be in default of their franchise agreement." (Id.) Because no third-party software

---

[7] Although there is no evidence *currently* before the Court indicating contumacious conduct by Domino's, the Court will not hesitate to impose appropriate sanctions in the future (possibly including a finding of contempt) if Plaintiffs are later able to demonstrate that Domino's is intentionally evading the Judgment in this case.

systems have yet been certified, Plaintiffs argue that Domino's is using the December 31, 2007 "deadline" as a way to force franchisees to opt to install PULSE this year, so that they can be guaranteed of not defaulting on their franchise agreements.

The Court fails to understand Plaintiffs' argument. There is no December 31, 2007 "deadline" for franchisees to either choose PULSE or choose a third-party software system. Rather, Domino's has *requested* that franchisees seeking certification of outside software do so by December 31, 2007. It certainly was not irrational for Domino's to make such a request, since certification (as has been seen) is a lengthy process; franchisees waiting until sometime early next year might run the risk of passing the true June 30, 2008 deadline without getting third-party software certified and installed in their stores.

Moreover, Plaintiffs's argument is premature. As noted above, the deadline for new computer equipment to be installed (whether PULSE or otherwise) is June 30, 2008. It is entirely possible that Domino's will certify third-party vendors sometime next year and that franchisees still will be able to get the third-party's equipment installed in their stores before the deadline. In the event there were evidence in the future that Domino's had intentionally delayed certifying vendors, giving franchisees a reasonable apprehension of defaulting under their franchise agreements, Plaintiffs could return to the Court at that time (and before the June 30, 2008 deadline) and seek relief. But at this juncture, there is no reason to conclude that franchisees are being "forced" to install PULSE because of a December 31, 2007 "deadline." Indeed, Plaintiffs have proffered no

evidence that any franchisee has opted to install PULSE out of a concern that it would not be able to get third-party software installed in a timely fashion.

## CONCLUSION

Simply put, there exists no persuasive evidence before the Court that Domino's is intentionally trying to delay the certification process. Nor does the Court believe that the specifications Domino's has provided are insufficient, as Plaintiffs' software vendors admit. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Plaintiffs' Motion for Enforcement of Judgment (Doc. No. 280) is **DENIED.**[8]

Dated: November 6, 2007

s/ Richard H. Kyle
RICHARD H. KYLE
United States District Judge

[8] As the Court reminded the parties at today's hearing on Plaintiffs' Motion, the Court expects the parties to work in good faith with one another to resolve any disputes that might arise during the certification process. The Court strongly believes that the issues raised in the instant Motion could have been resolved by the parties without the Court's intervention.